IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| MCDONALD APIARY, LLC, a Nebraska Limited Liability Company,<br><br>Plaintiff,<br><br>vs.<br><br>STARRH BEES, INC., a California Corporation, et al.,<br><br>Defendants. | 8:14-CV-351<br><br>ORDER |

    This matter is before the Court on the defendants' motion for summary judgment (filing 141) and their motion in limine (filing 158). Both motions will be denied.

BACKGROUND

    The plaintiff, McDonald Apiary, LLC, is in the beekeeping and honey production business in, among other places, western Nebraska. Filing 142 at 5.[1] Defendant Starrh Bees is in the same business. Filing 142 at 5. In 2014, McDonald Apiary and Starrh agreed that Starrh would bring about 6,000 beehives to Oklahoma and Nebraska to place them at locations chosen by McDonald Apiary. Filing 142 at 5-6. The parties agreed to share transportation costs (although they now disagree about what those costs entail), McDonald Apiary would extract the resulting honey at its extraction facilities, and McDonald Apiary and Starrh would split the proceeds. Filing 142 at 6.

    After the parties moved their activity from Oklahoma to Nebraska, their relationship fell apart. *See* filing 142 at 6-7. McDonald Apiary accuses Starrh of misappropriating McDonald Apiary's database of foraging locations in western Nebraska. Filing 142 at 7. McDonald Apiary also accuses

---

[1] Pursuant to NECivR 56.1, a party moving for summary judgment must include in its brief a statement of material facts about which the movant contends there is no dispute, and the party opposing summary judgment must include in its brief a concise response to that statement of facts, noting any disagreement. Properly referenced material facts in the movant's statement are considered admitted unless controverted in the opposing party's response. NECivR 56.1(b)(1).

Jonathan Gonzalez, a Starrh employee, of trespassing and vandalism at McDonald Apiary's Lisco, Nebraska extraction facility. Filing 142 at 10. And McDonald Apiary contends that Starrh is tortiously interfering with McDonald Apiary's business relationships with the landowners on whose land it has placed its hives. Filing 142 at 11-12.

McDonald Apiary's Second Amended Complaint (filing 59) alleges 12 claims for relief against Starrh; Gonzalez; Starrh's owner, Anne Ashley; and Anne's husband Dale Ashley, a Starrh employee (collectively, Starrh).² *See*, filing 59; filing 142 at 5. Two of McDonald Apiary's claims were dismissed at the pleading stage, *see* filing 40, and Starrh's motion for summary judgment seeks dismissal of nine of the remaining ten, *see* filing 142.

## DISCUSSION

Summary judgment is proper if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). The movant bears the initial responsibility of informing the Court of the basis for the motion, and must identify those portions of the record which the movant believes demonstrate the absence of a genuine issue of material fact. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). If the movant does so, the nonmovant must respond by submitting evidentiary materials that set out specific facts showing that there is a genuine issue for trial. *Id.*

On a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts. *Id.* Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the evidence are jury functions, not those of a judge. *Id.* But the nonmovant must do more than simply show that there is some metaphysical doubt as to the material facts. *Id.* In order to show that disputed facts are material, the party opposing summary judgment must cite to the relevant substantive law in identifying facts that might affect the outcome of the suit. *Quinn v. St. Louis County*, 653 F.3d 745, 751 (8th Cir. 2011). The mere existence of a scintilla of evidence in support of the nonmovant's position will be insufficient; there must be evidence on which the jury could conceivably find for the nonmovant. *Barber v. C1 Truck Driver Training, LLC*, 656 F.3d 782, 791-92 (8th Cir. 2011). Where the record taken

---

² McDonald Apiary has since, with leave of the Court, filed a Third Amended Complaint (filing 181), which is its operative complaint for purposes of trial. But Starrh's motion for summary judgment (filing 141), and the briefing on that motion (filing 142; filing 164; filing 171), are directed at the Second Amended Complaint (filing 59), and this order does not address the additional allegations of the Third Amended Complaint (filing 181) except where expressly noted.

as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. *Torgerson*, 643 F.3d at 1042.

## TRADE SECRETS

McDonald Apiary claims that Starrh violated the Nebraska Trade Secrets Act, Neb. Rev. Stat. § 87-501 *et seq.*, in connection with its alleged misappropriation of McDonald Apiary's database. Filing 59 at 9-11. Starrh claims that McDonald Apiary's database is not a "trade secret" because it is ascertainable by proper means, and was not the subject of reasonable efforts to maintain its secrecy. Filing 142 at 17. Starrh also argues that there is no evidence that the database was misappropriated. Filing 142 at 17.

Under Nebraska law, a "trade secret" is defined as information that:

(a) Derives independent economic value, actual or potential, from not being known to, and not being ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and
(b) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Neb. Rev. Stat. § 87-502(4). That definition is narrow; it means that if an alleged trade secret is ascertainable at all by any means that are not improper, the would-be secret is excluded from coverage under the Act. *First Express Servs. Grp., Inc. v. Easter*, 840 N.W.2d 465, 474 (Neb. 2013).

So, for instance, in *Easter*, the Nebraska Supreme Court concluded that the Trade Secrets Act did not protect the customer list of a company that sold crop insurance, which included "customers' names and their 2009 information: what crops the farmers had, what counties the crops were located in, what insurance plan the farmers bought, what percentage of coverage each farmer had, and what commission [the insurer] had earned." *Id.* at 469. The court explained that "simple Internet searches could identify which farmers farmed what land and could provide contact information for those farmers." *Id.* at 475. And the other

> information on the list essentially reflected the farmers' previous insurance coverage on their crops. It is undisputed that the individual farmers had all of that information and that [the defendant] could have obtained the information from them through a simple telephone call. Also, once a customer changed agencies, all of the customer's prior insurance information became available from the insurance carrier's Web site. Though the exact information required to transfer a customer is a bit

- 3 -

> unclear, the record shows that, at most, all that is required is the customer's name, address, type of crops, and signature, all of which are ascertainable by proper means.

*Id.* So, because the information on the customer list was ascertainable through proper means, the court concluded as a matter of law that it was not a trade secret. *Id.* at 476.

On the other hand, in *Home Pride Foods, Inc. v. Johnson*, the Nebraska Supreme Court held that there was sufficient evidence to find that the customer list of a food service company *was* a trade secret, because "the customer list contained information not available from publicly available lists." 634 N.W.2d 774, 782 (Neb. 2001). The court explained that, while courts "are reluctant to protect customer lists to the extent that they embody information that is readily ascertainable through public sources[,]" a customer list will be protected "where time and effort have been expended to identify particular customers with particular needs or characteristics," because "[s]uch lists are distinguishable from mere identities and locations of customers that anyone could easily identify as possible customers." *Id.* at 781-82.

Starrh argues that McDonald Apiary's location database was not a trade secret because, among other things, its beehive locations can be ascertained by looking for them while driving by on the road. Filing 142 at 26. And then, by observing the area and using Internet searches, an observer could collect information about the landowner and the crops in the area, which was also information that McDonald Apiary compiled. Filing 142 at 27.

But the Court is not persuaded that the information identified by the parties is "ascertainable" just because beehives are not invisible. There is a difference between information that is readily ascertainable and that which is *realistically* ascertainable. It might have been possible, one supposes, to reconnoiter every highway, county road, and deer path in western Nebraska looking for every one of the approximately 23,000 beehives that McDonald Apiary placed in the summer of 2014. *See* filing 143-1 at 24. But the Court is not convinced that such a theoretical possibility is enough to make the location database "ascertainable" within the meaning of *Easter*.

Starrh also argues that McDonald did not use reasonable efforts to maintain the secrecy of its information. Filing 142 at 20. Starrh points out that McDonald Apiary shares its location information with competitors, does not hide its hives, did not require confidentiality agreements, and did not password-protect its GPS devices or lock the vehicles in which the devices were often kept. Filing 142 at 20-25.

But the Court cannot conclude that the measures McDonald Apiary did take were unreasonable as a matter of law. Ed McDonald testified that while there were no signed confidentiality agreements, he did instruct people with whom information was shared that the information was secret and that they shouldn't tell anyone. Filing 143-1 at 42. Bryan Addington, McDonald Apiary's foreman, testified that sharecroppers were only given location information for their own bees, and that McDonald Apiary "didn't want a sharecropper knowing any other locations than what they needed to know to tend to their own hives." Filing 143-3 at 32. McDonald even threatened to fire Addington after Addington allowed Starrh to copy the entire database. Filing 143-3 at 32.

It may be that a handshake agreement on secrecy and failing to lock the car door may be found unreasonable. But, the Court finds, it is a question that the jury must decide. Whether information sought to be protected by the Trade Secrets Act rises to the level of a trade secret is a question of fact. *Home Pride Foods*, 634 N.W.2d at 708. And there is a genuine issue of material fact here.

Starrh also contends that there is not enough evidence that McDonald's location information was misappropriated. "Misappropriation" means

> (a) Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or
> (b) Disclosure or use of a trade secret of another without express or implied consent by a person who:
>> (i) Used improper means to acquire knowledge of the trade secret;
>> (ii) At the time of the disclosure or use, knew or had reason to know that his or her knowledge of the trade secret was:
>>> (A) Derived from or through a person who had utilized improper means to acquire it;
>>> (B) Acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or
>>> (C) Derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use; or
>> (iii) Before a material change of his or her position, knew or had reason to know that the information was a trade secret and that knowledge of it had been acquired by accident or mistake[.]

- 5 -

§ 87-502(2). "Improper means" are "theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means[.]" § 87-502(1).

Starrh argues that Addington, an agent of McDonald Apiary, gave the information to Starrh willingly. Filing 142 at 28-31. But the evidence does not compel that finding. Addington certainly intended to give *some* information to Starrh—the locations for Starrh's own hives. Filing 143-3 at 21-23. But Addington explained that he doesn't know how to run a computer, and did not expect that when Gonzalez asked to connect Addington's GPS device to Starrh's computer, that Gonzalez would copy the entire database. Filing 143-3 at 21-23. The same is true of a later, similar incident with Anne and Dale Ashley. Filing 143-3 at 22-23.

That evidence could, if credited by the jury, support a conclusion that Starrh obtained the information from Addington under false pretenses or, at least, knew that more information was being taken than Addington or McDonald intended. And there may also be a question as to whether the information was later used by Starrh, or is still being used by Starrh, despite knowing that it was meant to be secret and was mistakenly provided. In short, a jury could find that Starrh's acquisition of the database was "misappropriation" within the meaning of the Trade Secrets Act.

## TRESPASS

McDonald Apiary alleges that Gonzalez trespassed on McDonald Apiary's property, damaging its equipment and spilling its honey. Filing 59 at 11. Starrh contends there is insufficient evidence that Gonzalez (or anyone else associated with Starrh) was responsible for the alleged incident. Filing 142 at 31-32. And, Starrh argues, there could have been no "trespass" because Starrh had permission to enter the Lisco property. Filing 142 at 32.

But, to begin with, there is enough circumstantial evidence to support a finding that Gonzalez was the vandal—specifically, there is evidence that he threatened precisely the sort of vandalism that occurred, and was seen in the area shortly after the incident wearing black clothing and a ski mask. *See*, filing 143-3 at 52; filing 143-5 at 64-65.

Nor is Starrh's permission to enter the property necessarily fatal to a trespass claim. It is true that a trespasser is a person who enters or remains upon premises in possession of another "without the express or implied consent of the possessor." *Guzman v. Barth*, 552 N.W.2d 299, 301 (Neb. 1996). But Nebraska generally adheres to the Restatement (Second) of Torts with respect to trespass. *See*, *e.g.*, *Lambert v. Holmberg*, 712 N.W.2d 268, 273 (Neb. 2006); *Kenney v. Barna*, 341 N.W.2d 901, 905 (Neb. 1983); *Connolley v. Omaha Pub. Power Dist.*, 177 N.W.2d 492, 497 (Neb. 1970). Under the

Restatement, "[a] conditional or restricted consent to enter land creates a privilege to do so only in so far as the condition or restriction is complied with." Restatement (Second) of Torts § 168 (1965). And "[o]ne whose presence on land is pursuant to conduct of a certain sort, is a trespasser if he intentionally conducts himself in a different manner[.]" *Id.*, cmt. *d.*; *see* Restatement (Second) of Torts § 171(a) (1965); *see generally*, *Desnick v. Am. Broad. Companies, Inc.*, 44 F.3d 1345, 1352-53 (7th Cir. 1995); *Council on Am.-Islamic Relations Action Network, Inc. v. Gaubatz*, 793 F. Supp. 2d 311, 345 (D.D.C. 2011).

Whether Starrh's permission to enter McDonald Apiary's property was intended for a particular purpose, and whether Gonzalez's alleged conduct on the property was consistent with that purpose, are questions for the jury.

### BREACH OF CONTRACT

McDonald Apiary alleges that Starrh breached the parties' sharecrop agreement. Filing 59 at 12. Starrh does not challenge this claim on summary judgment. *See* filing 141.

### TORTIOUS INTERFERENCE WITH A BUSINESS EXPECTANCY

McDonald Apiary alleges that Starrh has tortiously interfered with McDonald Apiary's business expectancies—specifically, its business relationships with landowners on which McDonald Apiary has placed hives for honey production. Filing 59 at 12-13. Starrh argues that the claim should be dismissed because Starrh is engaged in lawful competition, not tortious interference. Filing 142 at 33-37. And, Starrh argues, McDonald Apiary has no evidence that any business relationship was actually harmed. Filing 142 at 37-38.

To succeed on a claim for tortious interference with a business relationship or expectancy, a plaintiff must prove (1) the existence of a valid business relationship or expectancy, (2) knowledge by the interferer of the relationship or expectancy, (3) an unjustified intentional act of interference on the part of the interferer, (4) proof that the interference caused the harm sustained, and (5) damage to the party whose relationship or expectancy was disrupted. *Sulu v. Magana*, 879 N.W.2d 674, 681-82 (Neb. 2016). Starrh's first argument takes aim at the element of an "unjustified intentional act of interference": Starrh argues that its competition is justified. *See* filing 142 at 33-34.

To assist in determining whether interference is "unjustified," Nebraska has adopted the seven-factor balancing test of the Restatement (Second) of Torts § 767 (1979). *Sulu*, 879 N.W.2d at 682. Under the Restatement's general test, factors to consider in determining whether

- 7 -

interference with a business relationship is "improper" include: (1) the nature of the actor's conduct, (2) the actor's motive, (3) the interests of the other with which the actor's conduct interferes, (4) the interests sought to be advanced by the actor, (5) the social interests in protecting the freedom of action of the actor and the contractual interests of the other, (6) the proximity or remoteness of the actor's conduct to the interference, and (7) the relations between the parties. *Id.*

The key to McDonald Apiary's tortious interference claim is that Starrh's competition is allegedly supported by its acquisition of McDonald Apiary's location database. In other words, McDonald Apiary has evidence suggesting that Starrh misappropriated its database and then used that information to contact McDonald Apiary's landowners—or, in other cases, to place hives in proximity to McDonald Apiary's landowners in order to hurt their yield and kill their hives. *See*, *e.g.*, filing 143-1 at 59-66; filing 143-3 at 46. Such evidence, if credited by the jury, could support a finding of unjustified interference.

The same evidence supports McDonald Apiary's claimed damages. Starrh contends that "McDonald Apiary will not be able to produce any evidence establishing a causal link between any of Starrh Bees' alleged behavior and any supposed harm to McDonald Apiary." Filing 142 at 38. But, to the contrary, the Court concludes that McDonald Apiary's evidence could support such a finding.

## CONVERSION

McDonald Apiary alleges that Starrh has converted honey that belonged to McDonald Apiary. Filing 59 at 13-14. Starrh contends that there is no evidence to support those allegations. Again, the Court disagrees. Ed McDonald described how he believed that honey had been taken by Starrh. Filing 143-1 at 34-37. And there is little dispute—particularly considering Starrh's counterclaim for an accounting, *see* filing 186 at 24-25—that *some* honey is unaccounted for by *someone*. The jury will resolve whether Starrh took any of it unlawfully.[3]

## COMPUTER CRIMES ACT

McDonald Apiary alleges that Starrh's taking of McDonald Apiary's database violated the Nebraska Computer Crimes Act, Neb. Rev. Stat. § 28-1341 *et seq*. Filing 59 at 14-15. That claim was dismissed at the pleading stage, filing 40 at 6-7, and remains dismissed.

---

[3] Starrh also complains about the evidence of damages from the alleged conversion. Filing 142 at 39. The Court will address the evidence of damages below.

UNIFORM DECEPTIVE TRADE PRACTICES ACT

McDonald Apiary alleges that Starrh's conduct violates the Nebraska Uniform Deceptive Trade Practices Act (UDTPA), Neb. Rev. Stat. § 87-301 *et seq*. Filing 59 at 15. Starrh contends that its alleged conduct is not a "practice," which Starrh argues is a habitual or customary performance or operation. *See* filing 142 at 39 (citing *Bruno v. Sunglass Hut Trading Corp.* No. A-07-745, 2008 WL 2277550, at \*3 (Neb. Ct. App. June 3, 2008)). The Court recognizes *Bruno*, but is not bound by an unpublished (and therefore nonbinding) decision of a state intermediate appellate court. *King v. Order of United Commercial Travelers of Am.*, 333 U.S. 153, 161 (1948). And the Court is not persuaded that the Nebraska Supreme Court would read a "habitual or customary" requirement into the UDTPA when it expressly provides, for instance, that

> [a] person engages in a deceptive trade practice when, in the course of his or her business, vocation, or occupation, he or she . . . [u]ses any scheme or device to defraud by means of: (i) Obtaining money or property by knowingly false or fraudulent pretenses, representations, or promises; or (ii) Selling, distributing, supplying, furnishing, or procuring any property for the purpose of furthering such scheme[.]

§ 87-302(a)(16). The statute, in other words, is quite specific about what conduct supports a "deceptive trade practice," and does not require that the conduct be repeated by any particular defendant.

Starrh also argues that there is no evidence of future harm that McDonald Apiary will suffer without the injunctive relief that is the only available relief under the UDTPA. *See Stenberg v. Consumer's Choice Foods, Inc.*, 755 N.W.2d 583, 587 (Neb. 2008). But McDonald Apiary has evidence suggesting the harm it is allegedly continuing to suffer as a result of Starrh's conduct. Whether any of that harm is caused by conduct that is a "deceptive trade practice" within the meaning of the UDTPA is a matter that the Court will decide based on the evidence presented at trial.

The Court notes McDonald Apiary's argument that its UDTPA claim should be decided by the jury. *See* filing 164 at 40. But the private remedy under the UDTPA is "an action for . . . an injunction under the principles of equity. . . ." § 87-303(a). This is not a claim for the jury. *See Wooddell v. Int'l Bhd. of Elec. Workers, Local 71*, 502 U.S. 93, 97-98 (1991). Accordingly, the Court will decide the UDTPA claim after the jury renders its verdict. *See Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 580 (1959).

### FRAUD

McDonald Apiary claims that Starrh committed fraud by allegedly entering into the sharecrop agreement on false pretenses—McDonald Apiary alleges that Starrh actually intended, from the outset, to use the sharecrop agreement to acquire McDonald Apiary's location information and then take those locations for itself. Filing 59 at 16-17. Starrh argues, very generally, that there is no competent evidence establishing the elements of fraud. Filing 142 at 41-42. The Court finds, however, that the evidence is sufficient to at least circumstantially suggest that Starrh misrepresented its actual intent in entering into the sharecrop agreement, thus supporting McDonald Apiary's claim of fraud.

### NEGLIGENCE

McDonald Apiary alleges that Starrh acted negligently in operating its machinery and equipment on property that McDonald Apiary owned or leased. Filing 59 at 17-18. Starrh argues that there is insufficient evidence to support such a claim. Filing 142 at 42-43. But the Court finds evidence sufficient to support McDonald Apiary's claim on at least one incident—the alleged vandalism at its Lisco facility. The record suggests that at the time of the incident, McDonald Apiary and Starrh were involved in a dispute over pallets that belong to Starrh and were allegedly at the Lisco facility. *See* filing 143:5 at 64-65. It is at least plausible, from the evidence, that the "honey tipping" incident could been seen as a negligent consequence of an attempt by Starrh to retrieve its pallets. Accordingly, there is enough evidence (at least at this point) to warrant instructing the jury on negligence.

### JUNKIN ACT

McDonald Apiary alleges that Starrh violated Nebraska's unlawful restraint of trade statutes (the "Junkin Act"), Neb. Rev. Stat. § 59-801 *et seq*., by appropriating McDonald Apiary's database. Filing 59 at 18-19. That claim was dismissed at the pleading stage, filing 40 at 8-10, and remains dismissed. McDonald Apiary has alleged a substantively new Junkin Act claim in its Third Amended Complaint, filing 181 at 21-24, and the new Junkin Act claim is not challenged on summary judgment.

### QUANTUM MERUIT AND UNJUST ENRICHMENT

McDonald Apiary asserts claims for quantum merit and unjust enrichment, as "alternative[s]" to its breach of contract claim, based on the value of the services and materials McDonald Apiary allegedly provided Starrh. Filing 59 at 19-20. Starrh argues that those claims sound in implied contract, and are unsupportable where both sides agree that an expressed

contract exists. *See* filing 142 at 43-44. McDonald Apiary responds that the parties do not agree on the supposed terms of that contract, raising the possibility that the contract may not be enforceable. *See* filing 164 at 40-41. Accordingly, McDonald Apiary resists dismissing these claims at this point. *See* filing 164 at 40-41.

The problem for the Court is that at no point has either side moved to dismiss the other's contract claims. Accordingly, the precise nature of the contract claims, and the parties' disagreement, has not been made clear to the Court. As a result, the Court is in a poor position to evaluate a quasi-contract claim where the parties' contract claims themselves are uncertain. The Court will, therefore, not dismiss the quasi-contract claims at this time. Whether those claims will ultimately be submitted to the jury is a question for a later time.[4]

### DAMAGES

Starrh argues, at length, that McDonald Apiary should be precluded from seeking damages for "lost profits" because, according to Starrh, such damages cannot be established with reasonable certainty. The Court agrees with Starrh to the extent that some of McDonald's evidence of damages could be considered speculative. But the Court finds that there is enough evidence of damages to warrant submission to the jury.

A plaintiff's evidence of damages may not be speculative or conjectural and must provide a reasonably certain basis for calculating damages: the general rule is that uncertainty as to the fact of whether damages were sustained at all is fatal to recovery, but uncertainty as to the amount is not if the evidence furnishes a reasonably certain factual basis for computation of the probable loss. *Pribil v. Koinzan*, 665 N.W.2d 567, 572 (Neb. 2003). The initial question of law for the Court is whether the evidence of damages provides a basis for determining damages with reasonable certainty, *i.e.*, the evidence of damages is not speculative or conjectural. *Id.* at 573. If the evidence does provide such a basis, the issue of damages can be submitted to the jury. *Id.*

On the evidence before the Court, there is certainly enough evidence to support a finding that McDonald Apiary sustained some damages. And, the Court concludes, Ed McDonald's experience is sufficient foundation for his

---

[4] And, the Court notes—despite their equitable appearance, these are actions at law seeking legal relief, and therefore are claims for the jury. *See, City of Scottsbluff v. Waste Connections of Nebraska, Inc.*, 809 N.W.2d 725, 739 (Neb. 2011); *Collection Bureau of Grand Island, Inc. v. Fry*, 610 N.W.2d 442, 448 (Neb. Ct. App. 2000); *see also Grabinski v. Blue Springs Ford Sales, Inc.*, 136 F.3d 565, 571 (8th Cir. 1998).

testimony regarding the damage that McDonald Apiary's honey production allegedly suffered as a result of Starrh's conduct.

Starrh's motion in limine (filing 158) is based on similar grounds: Starrh argues that McDonald's testimony, and that of Janet Labenz, should be precluded pursuant to Fed. R. Evid. 702 and *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993). The Court disagrees.

The objective of the *Daubert* inquiry is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field. *Am. Auto. Ins. Co. v. Omega Flex, Inc.*, 783 F.3d 720, 722 (8th Cir. 2015). This is a flexible, case-specific inquiry: the Court must decide whether this particular expert had sufficient specialized knowledge to assist the jurors in deciding the particular issues in the case. *Id.* at 723.

*Daubert* established a non-exclusive checklist for trial courts to use in assessing the reliability of expert testimony, including whether the theory or technique can and has been tested, whether it has been subjected to peer review, whether there is a high known or potential rate of error, and whether the theory or technique enjoys general acceptance within a relevant scientific community. *See United States v. Holmes*, 751 F.3d 846, 850 (8th Cir. 2014) (citing *Daubert*, 509 U.S. at 592–94). But the "theory or technique" at issue here is simple and well-established: McDonald Apiary's evidence is based on comparing its previous yields with yields after Starrh's alleged misconduct.

Starrh's contention that there are "no financial data or records" supporting the opinion testimony, *see* filing 159 at 3, is misplaced for two reasons. First, it is better characterized as a foundational objection than a *Daubert*-based inquiry into the theory or technique on which the opinions are based. Second, McDonald's personal knowledge of his business is, contrary to Starrh's argument, sufficient foundation for him to opine on damages. Starrh is, of course, free to cross-examine him about the accuracy of his information, and alleged inadequacy of his record-keeping. But the Court is not aware of any legal obligation of a beekeeping business to keep written records of its yields for every location and hive, and declines to implicitly impose such an obligation as a condition precedent to any legal recovery for its losses.

In sum, the Court finds enough evidence of damages, at this point, to warrant submission to the jury.[5] How to instruct the jury on damages—

---

[5] The Court also notes that, to the extent that prospective damages are sought, the jury will be instructed that damages may only be recovered for injuries that are reasonably certain to occur. *Pribil*, 665 N.W.2d at 574.

specifically, what measure of damages will be warranted by the evidence presented at trial—is a matter for later determination.[6]

### CLAIMS AGAINST INDIVIDUAL DEFENDANTS

Finally, Starrh claims that McDonald Apiary's claims should be dismissed to the extent they are asserted against Gonzalez and the Ashleys: Starrh contends that they acted in their capacities as agents of Starrh. Filing 142 at 54-55. McDonald Apiary generally disagrees. Filing 164 at 50.

The problem for the Court is that both sides may be right to an extent, and neither side addresses the claims in any detail. For instance, Starrh is likely correct that the individual defendants are not party to any contract reached with McDonald Apiary. On the other hand, the corporate veil is no defense to claims such as conversion or fraud, even if the defendant acted on behalf of the company, if the defendant knew of or participated in the conduct that resulted in the injury. *See*, *e.g.*, *Oriental Trading Co. v. Firetti*, 236 F.3d 938, 946 (8th Cir. 2001); *LOL Fin. Co. v. Paul Johnson & Sons Cattle Co.*, 758 F. Supp. 2d 871, 895 (D. Neb. 2010); *Carlson v. Metz*, 532 N.W.2d 631, 635 (Neb. 1995); *Hecker v. Ravenna Bank*, 468 N.W.2d 88, 95–96 (Neb. 1991); *Vogt v. Town & Country Realty of Lincoln*, 231 N.W.2d 496, 502 (Neb. 1975); *Allied Bldg. Credits, Inc. v. Damicus*, 93 N.W.2d 210, 214 (Neb. 1958); *Victory Lake Marine, Inc. v. Velduis*, 621 N.W.2d 306, 311 (Neb. Ct. App. 2000).

Because neither side has addressed in any particularity which claims may subject the individual defendants to liability, and which may not, the Court will not dismiss claims as to any of the defendants at this point. Again, how the jury should be instructed as to liability for each claim is a matter the Court will address later.

IT IS ORDERED:

1. Starrh's motion for summary judgment (filing 141) is denied.

2. Starrh's motion in limine (filing 158) is denied.

---

[6] Starrh also argues, briefly, that certain aspects of McDonald's alleged damages should be precluded because no documents were produced supporting them. The Court will address that argument *if* it is shown that such documents exist and should have been produced.

Dated this 10th day of October, 2016.

BY THE COURT:

John M. Gerrard
United States District Judge

- 14 -