IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| MCDONALD APIARY, LLC, a Nebraska Limited Liability Company,<br><br>Plaintiff,<br><br>vs.<br><br>STARRH BEES, INC., a California Corporation, et al.,<br><br>Defendants. | 8:14-CV-351<br><br>MEMORANDUM AND ORDER |

This matter is before the Court on the parties' post-trial briefing on claims submitted to the Court, McDonald Apiary's motion for judgment as a matter of law or for new trial (filing 280), and Starrh Bees' motion for judgment as a matter of law (filing 278).

## CLAIM SUBMITTED TO THE COURT

The pretrial order (filing 191) identified several controverted and unresolved issues, some of which were to be tried to the Court. Filing 191 at 3-13. The Court's order on post-trial briefing (filing 275) directed the parties to assert any claims they still intended to pursue in their post-trial briefs, and advised that any claims not asserted would be waived. Filing 275 at 1. The only claim that has been asserted post-trial is McDonald's claim against Starrh and the other defendants (collectively, Starrh) under the Nebraska Uniform Deceptive Trade Practices Act, Neb. Rev. Stat. § 87-301 *et seq*. (UDTPA). *See* filing 284. Accordingly, the other claims tried to the Court, including Starrh's claims for accounting and replevin, will be dismissed. The Court's findings of fact and conclusions of law with respect to McDonald's UDTPA claim follow.

The UDTPA sets forth a lengthy list enumerating the "deceptive trade practices" actionable under the UDTPA. *See* § 87-302(a). McDonald's post-trial brief is not particularly helpful at identifying precisely which statutory practices are at issue, generally asserting that Starrh's "conduct violates UDTPA, Nebraska Revised Statutes §§ 87-301 to 87-306, specifically including various deceptive trade practices set forth in section 87-302(a)." Filing 284 at 17. But McDonald's pretrial proposed findings of fact and

conclusions of law (filing 210) focus on three particular provisions. Filing 210 at 19-20. Specifically,

> [a] person engages in a deceptive trade practice when, in the course of his or her business, vocation, or occupation, he or she . . . [u]ses any scheme or device to defraud by means of: (i) Obtaining money or property by knowingly false or fraudulent pretenses, representations, or promises; or (ii) Selling, distributing, supplying, furnishing, or procuring any property for the purpose of furthering such scheme[.]

§ 87-302(a)(16). It is also a "deceptive trade practice" if a party "[c]auses likelihood of confusion or of misunderstanding as to affiliation, connection, or association with, or certification by, another," § 87-302(a)(3), or "[d]isparages the goods, services, or business of another by false or misleading representation of fact," § 87-302(a)(9). In the absence of other direction, the Court will focus its attention on those provisions.

McDonald contends that Starrh engaged in deceptive trade practices in six ways: (1) concealing its intent to compete with McDonald, (2) falsely representing that it was associated with McDonald, (3) placing hives without permission from landowners, (4) permitting Susan Mulligan to represent herself as Starrh's attorney, (5) placing its hives near McDonald's, and (6) spoliation of evidence. Filing 284 at 17-24. The Court finds no merit to any of those claims.

### CONCEALING INTENT TO COMPETE

McDonald argues that Starrh engaged in a deceptive trade practice by allegedly concealing its intent to compete with McDonald during its business relationship with McDonald. Filing 284 at 18. The Court finds no merit to this claim for two reasons. First, as discussed by the Court in dismissing McDonald's fraud claim, the Court finds insufficient evidence to prove that Starrh misrepresented any intent to compete with McDonald. And in the absence of misrepresentation, the Court finds the evidence insufficient to show a "scheme or device to defraud" within the meaning of § 87-302(a)(16), or any other deceptive trade practice enumerated in § 87-302(a).

But even if there was evidence of some sort of deceptive practice, it would still not warrant relief. The UDTPA provides only for equitable relief. *See State ex rel. Stenberg v. Consumer's Choice Foods, Inc.*, 755 N.W.2d 583, 587 (Neb. 2008). Specifically, injunctive relief can be sought by a "person likely to be damaged by a deceptive trade practice of another[,]" and the Court may order additional equitable relief if necessary "to protect the public

from further violations[.]" § 87-303. But here, even if Starrh concealed or misrepresented an intent to compete, there is no evidence that any such practice is ongoing. Simply put, whatever Starrh did is done: there is no evidence that McDonald is likely to be further damaged, nor any evidence that the public requires protection.

### IMPERSONATING MCDONALD APIARY

McDonald's claim that Starrh misrepresented itself as being associated with McDonald is premised on the testimony of John Haller, who testified that Starrh placed hives on his property despite him telling Starrh's representatives that they could do so as long as they were "part of Susan McDonald's deal[.]" But the Court finds the evidence on this claim to be insufficient to prove Starrh engaged in a deceptive trade practice.

Haller testified that his conversation with Jonathan Gonzalez and his companions lasted only 60 to 90 seconds. And Haller admitted that his conversation primarily took place with Jeff Hugen, not Gonzalez, so there is no clear basis to impute anything Hugen heard to the defendants. But more fundamentally, there is very little other evidence of any intent to deceive. The evidence is that Gonzalez was in a truck with a "Starrh Bees" logo on the side, and that the hives that were placed were clearly marked as Starrh's as well. Simply put, if Starrh was trying to pass itself off as McDonald, it wasn't trying very hard. The Court finds the evidence to be more consistent with a simple misunderstanding than a deceptive trade practice.

And furthermore, as discussed above, there is no evidence to support an award of prospective injunctive relief. One instance, even if it had been proved, would be insufficient to establish a course of conduct threatening damage to McDonald or the public at large.

### PLACING HIVES WITHOUT PERMISSION

McDonald's claim that Starrh placed hives without landowner permission is premised on Gary Binger's testimony. But Binger only testified that he saw some beehives on his property: he could not say that they were Starrh's. Nor does any other evidence establish that they were Starrh's. So, there is clearly not enough evidence to prove that Starrh was responsible for those hives—or, even if they were Starrh hives, that the placement was anything other than inadvertent or accidental. There is even less evidence that the single set of misplaced hives presents an ongoing threat of injury warranting injunctive relief. And there is absolutely no evidence that McDonald was harmed in any way, meaning that McDonald is not a proper party to assert this claim in the first place.

### SUSAN MULLIGAN MISREPRESENTATION

McDonald calls the Court's attention to Susan Mulligan's assertion that she was Starrh's attorney, which McDonald says Starrh failed to correct. But as has been the case throughout this litigation, McDonald cannot explain why Mulligan's representation is a basis for liability. It was certainly not a deceptive trade practice. It is questionable, to begin with, whether Mulligan's statement (or Starrh's supposed adoption of that statement) actually took place in the course of Starrh's "business, vocation, or occupation." *See* § 87-302(a). Nor can the Court find a specific deceptive trade practice into which Mulligan's statement would fit. The closest would be a "scheme or device to defraud," but there is no evidence to suggest that Mulligan's statement or Starrh's silence was even *intended* to "[o]btain[] money or property by . . . false . . . pretenses" or "procur[e] any property," much less that either of those was actually accomplished. *See* § 87-302(a)(16). Nor, as discussed previously, is there evidence of ongoing conduct warranting injunctive relief.

### HIVE PLACEMENT

McDonald's next argument is something new: while McDonald has taken issue for some time with Starrh's alleged predatory placement of its beehives, this appears to be the first time McDonald has tried to fit this conduct into the UDTPA. It fares somewhat better than McDonald's previous theories, insofar as there is at least some evidence to support ongoing conduct that could be enjoined. But the evidence does not support a finding that Starrh's conduct, even if wrongful in some way, violates the UDTPA. McDonald does not identify, with any particularly, the statutory basis for its suggestion that this conduct violates the UDTPA. It certainly doesn't involve "knowingly false or fraudulent pretenses, representations, or promises." *See* § 87-302(a)(16)(i). Simply put, there is nothing "deceptive" about it.

McDonald's theory seems to be that Starrh's hive placement is related to supposed deception in concealing an intent to compete: that is, that the "deception" was hiding an intent to compete, and the ongoing conduct to be enjoined relates to hive placement. *See* filing 284 at 21-23. As explained above, the Court finds the evidence insufficient to prove that Starrh engaged in a deceptive trade practice with respect to its intent to compete with McDonald. The Court also finds the evidence insufficient to prove a connection between Starrh's previous business relationship with McDonald and its hive placement in subsequent years: the Court is unpersuaded that Starrh wrongfully obtained information from McDonald, or has used any such information to support its hive placement in subsequent years. The Court finds that McDonald's evidence with respect to Starrh's hive placement fails to prove a UDTPA violation.

SPOLIATION

Finally, McDonald's remaining argument is completely new: for the first time, McDonald is attempting to predicate liability on alleged spoliation of evidence. McDonald points to Gonzalez' trial testimony that he had his laptop hard drive wiped in 2015 because it had a virus. Filing 288-3 at 15. This, McDonald says, was "another deceptive act" and that as a result, Exhibit 47 itself is "deceptive" and may be fraudulent. Filing 284 at 5-6.

McDonald seems to be arguing, as best the Court can tell, that its arguments about the weight of the evidence are independently actionable. McDonald does not cite any authority, and the Court is not aware of any authority, suggesting that alleged discovery violations can be spun into an independent claim for relief. Nor is the Court persuaded that a wholly new theory of recovery can be asserted in post-trial briefing. Had McDonald suggested at trial that Gonzalez' laptop was the basis for a claim for relief, Starrh would have had the opportunity to present evidence on that point—for instance, evidence corroborating Gonzalez' claim of a computer virus. The Court does not view this theory as having been properly pled or presented to the Court.

And even if properly presented, there is not enough evidence to support the claim. The only evidence before the Court is Gonzalez' testimony regarding what happened to his laptop and why.[1] While McDonald questions his credibility, there is nothing to support McDonald's claim *except* Gonzalez' testimony. McDonald cannot meet its burden as plaintiff to prove a UDTPA violation by relying solely on questions about a defendant's credibility. The bottom line is that the Court has no *evidence* that sufficiently calls Gonzalez' credibility into question. (And, as before, there is no evidence of ongoing misconduct warranting injunctive relief.)

CONCLUSION

In sum, the Court finds insufficient evidence to prove a UDTPA violation, under any of the theories advanced by McDonald. The Court will dismiss McDonald's UDTPA claim.

MCDONALD'S RULE 50/RULE 59 MOTION

McDonald moves for judgment as a matter of law on Starrh's breach of contract claim. Filing 281 at 1. McDonald moves for "sanctioning in the form of revoking Starrh's damages awards and entering an injunction" for Starrh's

---

[1] McDonald also complains about Gonzalez' GPS device, his phone, and other missing records, *see* filing 284 at 14-15, but the Court finds that evidence no more compelling, and the supposedly missing evidence to be far less relevant.

alleged spoliation of evidence. Filing 281 at 2. And McDonald moves for a new trial on its Junkin Act claim based on alleged instructional error.

In reviewing the sufficiency of the evidence in this diversity case, the Court applies "the appropriate state sufficiency standard where the issue has not been raised by the parties and the state and federal standards are similar." *Michigan Millers Mut. Ins. Co. v. Asoyia, Inc.*, 793 F.3d 872, 877-78 (8th Cir. 2015). Both state and federal law demand substantial evidence to support the jury's verdict and requires the Court to view the evidence in the light most favorable to the prevailing party, drawing all reasonable inferences to its benefit. *See*, *id.*; *Frank v. Lockwood*, 749 N.W.2d 443, 449 (Neb. 2008).

The standard for granting a motion for new trial is higher still. *Michigan Millers*, 793 F.3d at 878. The key question is whether a new trial is necessary to prevent a miscarriage of justice. *Coterel v. Dorel Juvenile Grp., Inc.*, 827 F.3d 804, 807 (8th Cir. 2016).

BREACH OF CONTRACT

McDonald's argument with respect to Starrh's breach of contract is premised on alleged inconsistency of the verdict. Filing 281 at 13. The jury, McDonald argues, correctly concluded that Starrh breached its contract with McDonald. Filing 281 at 13. Having reached that conclusion, McDonald says, "[t]he jury could not, and should not, have found in Starrh's favor on Starrh's breach of contract claim." Filing 281 at 13. So, "[a]s a matter of law, the jury's verdict in Starrh's favor on its breach of contract claim cannot stand." Filing 281 at 13.

But a new trial based on an inconsistent verdict is warranted "only if there was no principled basis upon which to reconcile the jury's inconsistent findings." *SEC v. Quan*, 817 F.3d 583, 586 (8th Cir. 2016).[2] And in addition, a party waives any objection to an inconsistent verdict by failing to object to the inconsistency before the jury is discharged. *Williams v. KETV Television, Inc.*, 26 F.3d 1439, 1443 (8th Cir. 1994).

So, McDonald has waived its claim of inconsistency by failing to object before the jury was discharged. *See id.* And McDonald's argument is also without merit, because there is an obvious way to reconcile the jury's findings. McDonald's theory is that because the jury found that Starrh breached the contract, and Starrh must have breached the contract first, then the jury should have found in McDonald's favor on its affirmative defense of

---

[2] In fact, some courts have held that general verdicts reflecting contradictory legal conclusions are *never* grounds for overturning a civil verdict in a civil case. *See id.* at 588 n.3. But the Eighth Circuit has not spoken to that, *see id.*, and it is unneccesary for the Court to consider the question here.

prior material breach. Filing 281 at 13. But the jury's conclusions can be reconciled if Starrh's breach was not material.

A material breach of contract will excuse the non-breaching party from its performance. *Gary's Implement, Inc. v. Bridgeport Tractor Parts, Inc.*, 702 N.W.2d 355, 370 (Neb. 2005). But a minor breach of contract is still compensable in damages. *Id.* The obligation of the innocent party depends on the materiality of the breach committed by the wrongdoer. *Sonken-Galamba Corp. v. Alpirn*, 292 N.W. 46, 48 (Neb. 1940).

> [I]t depends in each case on the terms of the contract and the circumstances of the case, whether the breach of contract is so material as to justify the injured party in refusing to proceed further and suing for damages for breach of the entire contract, or whether the breach is severable, giving rise to a claim for compensation, but not to a right to treat the whole contract as broken.

*Id.* The jury here found that Starrh breached the contract and caused McDonald $5,800 in damages, while McDonald's breach resulted in damages to Starrh of $206,920. Filing 273 at 2-3. It is entirely possible that the jury found that Starrh's breach, even if prior to McDonald's, was not material. And there was substantial evidence to support those findings.

SPOLIATION

McDonald contends that as a sanction for Gonzalez' alleged spoliation of evidence, the Court should "revoke any judgment entered in favor of Defendants and enter a permanent injunction against Defendants prohibiting them from placing their beehives within two miles of McDonald Apiary's current and historic apiary locations or upon lands which do not have sufficient forage to support such hives." Filing 281 at 17-18.

It is unclear to the Court how McDonald makes the leap from alleged spoliation to the remedy for that spoliation being an injunction regarding hive placement. It is also not clear to the Court what the legal basis for the request is: it is not a request, for instance, for a new trial pursuant to Fed. R. Civ. P. 59. Perhaps it could be construed as a motion for judgment as a matter of law pursuant to Fed. R. Civ. P. 50(b), but it is hard for the Court to see how that could be the case given that Rule 50(b) permits a "renewed" motion for judgment as a matter of law, and McDonald cannot renew a request it never made in the first place.

The basis for McDonald's spoliation argument is found in Gonzalez' trial testimony on December 14, 2016. Filing 288-3. But McDonald did not

ask for sanctions, or a mistrial, or a directed verdict based on spoliation, on that day or the two remaining days of trial after that. McDonald did not ask for a jury instruction regarding spoliation. In sum, McDonald did nothing to advance its spoliation argument until its post-trial briefs. And that is simply too late. *See Nassar v. Jackson*, 779 F.3d 547, 551 (8th Cir. 2015).

Furthermore, the Court does not find sufficient evidence to establish sanctionable spoliation. Spoliation requires (1) a finding of intentional destruction indicating a desire to suppress the truth, and (2) a finding of prejudice to the opposing party. *Burris v. Gulf Underwriters Ins. Co.*, 787 F.3d 875, 879 (8th Cir. 2015). Even assuming prejudice, the Court is unpersuaded that evidence was intentionally destroyed with desire to suppress the truth. The Court has no evidentiary basis to disbelieve Gonzalez' testimony regarding his computer and the other evidence that was mislaid. Perhaps Gonzalez is an imperfect record-keeper (as is McDonald, for that matter), but the evidence does not establish a warrant for the harsh sanctions associated with spoliation—much less the extraordinary sanctions sought by McDonald.

## JUNKIN ACT CLAIM

Finally, McDonald argues for a new trial on its Junkin Act claim as a result of the Court's refusal to give McDonald's proposed jury instruction on that claim. Filing 281 at 18. And McDonald "further renews its motion for judgment as a matter of law on all grounds." Filing 281 at 18. The Court will deny those requests for the reasons previously stated on the record.

McDonald's Rule 50/Rule 59 motion will be denied.

## STARRH'S RULE 50 MOTION

Starrh moves for judgment as a matter of law on two claims: McDonald's negligence claim, and McDonald's UDTPA claim. The Court will deny Starrh's motion on both points.

First, Starrh argues that the evidence was insufficient to permit the jury to find causation on McDonald's negligence claim, or determine damages with reasonable certainty. For the reasons the Court has previously explained on the record, the Court disagrees. Proof of damages to a mathematical certainty is not required; the proof is sufficient if the evidence is such as to allow the trier of fact to estimate actual damages with a reasonable degree of certainty and exactness. *Pribil v. Koinzan*, 665 N.W.2d 567, 572 (Neb. 2003). That standard was met here.

Finally, Starrh also argues for judgment as a matter of law on McDonald's UDTPA claim. That will be denied: while the Court as the trier of fact has found in Starrh's favor on that claim, there was at least sufficient

evidence on one of McDonald's theories—the theory based on Starrh representing itself as associated with McDonald—to warrant submission of the claim, even if the Court found the evidence insufficient on the merits.

Accordingly, Starrh's Rule 50 motion will be denied.

IT IS ORDERED:

1. McDonald Apiary's motion for judgment as a matter of law or for new trial (filing 280) is denied.

2. Starrh Bees' motion for judgment as a matter of law (filing 278) is denied.

3. McDonald Apiary's UDTPA claim, and Starrh Bee's accounting and replevin claims, are dismissed.

Dated this 3rd day of April, 2017.

BY THE COURT:

John M. Gerrard
United States District Judge